IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION



K.G.S. b/n/f BRADLEY S. AND § \
BETHANN S., AND BETHANN S., § \
Individually, § \
§ \
    Plaintiffs, § \
§ \
§ \
VS. § NO. 4:11-CV-303-A \
§ \
OWEDIA J. KEMP, Individually, § \
ET AL., § \
§ \
    Defendants. §

MEMORANDUM OPINION
and
ORDER

Now before the court for consideration is the motion to dismiss filed in the above-captioned action by defendants, Owedia J. Kemp ("Kemp") and Malcolm Turner ("Turner"), each sued in his or her individual capacity. Plaintiffs, K.G.S., by his next friends Bradley S. ("Bradley") and BethAnn S. ("BethAnn"), filed a response,[1] and defendants filed a reply. Having now considered all of the parties' filings pertaining to the motion, plaintiffs' original complaint, and the applicable legal authorities, the court concludes that the motion should be granted.

---

[1] Plaintiffs on August 22, 2011, filed a "First Amended Response" to defendants' motion to dismiss. Plaintiffs filed the amended response seven days after defendants filed their reply, without obtaining either consent of the defendants or leave of court. Therefore, the court will disregard the amended response and consider the response filed August 4, 2011.

I.

## Background and the Motion to Dismiss

Plaintiffs initiated this action by the filing of their original complaint, making the following factual allegations:

At the time of the events forming the basis of this action, K.G.S. was a ninth-grade student at Martin High School in the Arlington Independent School District ("AISD"). Bradley and BethAnn are K.G.S.'s parents. Defendants are employees of the AISD. Turner is alleged to be the Executive Director of Student Services; Kemp's position is unknown.

On or about May 4, 2009, K.G.S. was playing golf with friends at a public golf course in Arlington, Texas. Although K.G.S. was a member of the golf team of Martin High School, and carried a golf bag with "Martin High School" printed on the side, his golf outing on May 4 was unrelated to any school event or activity.

Kemp and another woman were also playing golf that day at the same course, behind K.G.S. and his friends. At around the sixth hole on the course, one of the two women drove a golf ball into K.G.S.'s group without prior warning and without apologizing. When the golfers reached the tenth hole, Kemp and the other golfer with her "proceeded to 'play through' Plaintiff and his friends without first requesting permission." Pls.' Original Compl. ("Compl.") at 2-3.

The fairways for the eleventh and twelfth holes were parallel, with the green on the twelfth hole a short distance away from the tee for the eleventh hole. When Kemp and the other woman went to the twelfth hole, "[K.G.S.] took one of his personal golf balls, wrote the words 'fucking nigger bitch' on the golf ball, and placed it in the cup of the 12th hole." Id. at 3. When Kemp arrived at the green for the twelfth hole, she picked up the golf ball and demanded to know if K.G.S. or one of his friends had put the ball in the hole, which K.G.S. admitted. Kemp was wearing a shirt with the "AISD" logo on it, and she asked if K.G.S. and his friends were students at Martin High School; they admitted that they were.

The incidents that form the basis of the complaint allegedly occurred on the next school day, May 5, 2009, when:

> Kemp reported the incident to [] Turner, the Executive Director of Student Services of the Arlington School District, who, on information and belief, instructed the Assistant Principal at Martin High School, as well as the golf coach at Martin High School, to discipline [K.G.S.] for writing the offensive language on the golf ball.

Id. On May 5, the golf coach told K.G.S. that he had learned of the incident and that K.G.S. would be removed from the golf team.

On May 8, 2009, the assistant principal of Martin High School informed Bradley that his son would be sent to the AISD Disciplinary Alternative Education Program ("DAEP") for the remainder of the semester.

3

Plaintiffs filed the instant action on May 5, 2011, alleging defendants violated K.G.S.'s rights under the First and Fourteenth Amendments pursuant to 42 U.S.C. § 1983.[2] Bradley and BethAnn asserted claims as the next friend of K.G.S. and on their own behalf.

Defendants argued for dismissal on the grounds that: (1) K.G.S.'s writing on the golf ball was not constitutionally protected speech; (2) defendants are entitled to qualified immunity; and (3) Bradley and BethAnn may not assert a civil rights claim on alleged violations of K.G.S.'s constitutional rights.

II.

Applicable Legal Principles

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need

---

[2] The complaint stated that jurisdiction is predicated on § 1983 as well as Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act ("ADA"). The portion of the complaint identifying plaintiffs' causes of action does not have a heading stating claims under either the Rehabilitation Act or the ADA.

4

not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. ---, 129 S. Ct. 1937, 1950 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.")

Moreover, to survive a motion to dismiss for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Id. at 1249 (citing Twombly, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950.

III.

Analysis

A.  Claims Under 42 U.S.C. § 1983

Without reaching the question of whether or not K.G.S.'s

writing on the golf ball is undeserving of First Amendment protection, the court agrees that defendants are entitled to qualified immunity.

Qualified immunity insulates a government official from civil damages liability when the official's actions do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The court will not deny qualified immunity unless "existing precedent [has] placed the statutory or constitutional question beyond debate." Morgan v. Swanson, --- F.3d ---, 2011 WL 4470233 at *7 (5th Cir. Sept. 27, 2011) (revised Sept. 29, 2011) (citing Ashcroft v. al-Kidd, --- U.S. ----, 131 S.Ct. 2074, 2083 (2011)). In analyzing whether an individual defendant is entitled to qualified immunity, the court considers whether a plaintiff has alleged any violation of a constitutional right, and whether the right was "clearly established" at the time of the alleged violation. Harlow, 457 U.S. at 818. The court may use its discretion in deciding which of the two prongs in the qualified immunity analysis to first consider in light of the circumstances of a particular case. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

The Fifth Circuit recently explained the meaning of "clearly established law" in the context of a qualified immunity analysis:

> When considering a defendant's entitlement to qualified immunity, we must ask whether the law so clearly and unambiguously prohibited his conduct that "*every* 'reasonable official would understand that what he is doing violates [the law].'" To answer that question in the affirmative, we must be able to point to controlling authority--or a "robust 'consensus of persuasive authority'"--that defines the contours of the right in question with a high degree of particularity.
>
> Where no controlling authority specifically prohibits a defendant's conduct, and when the federal circuit courts are split on the issue, the law cannot be said to be clearly established.

Morgan, --- F.3d at ---, 2011 WL 4470233 at *7 (brackets and emphasis in original)(internal citations and footnotes omitted).

The court finds dispositive in this case the absence of "controlling authority specifically prohibit[ing]" defendants' conduct. The parties cite to a number of Supreme Court cases governing student speech, none of which are on point with the instant action. Nor have the parties directed the court to Fifth Circuit authority addressing the issues raised here.

Instead, plaintiffs rely heavily on Layshock ex rel. Layshock v. Hermitage School District, 650 F.3d 205 (3d Cir. 2011) (en banc); J.S. ex rel. Snyder v. Blue Mountain School District, --- F.3d ----, 2011 WL 2305973 (3d Cir. 2011) (en banc); Thomas v. Board of Education, Granville Central School District, 607 F.2d 1043 (2d Cir. 1979); and Klein v. Smith, 635

F. Supp. 1440 (D. Me. 1986). Again, none of these cases can be considered "controlling authority" that would have given these defendants fair warning that disciplining a student for writing a vulgar, racist statement on a golf ball would infringe on that student's First Amendment rights. See Hope v. Pelzer, 536 U.S. 730, 741 (2002) (noting that the "salient question" is whether the state of the law at the time of the alleged violation gave defendants fair warning that their actions were unconstitutional).

This is especially true of Layshock and Snyder: as defendants point out, separate panels of the Third Circuit issued their original opinions on the same day in early 2010, reaching opposite conclusions concerning First Amendment protection of off-campus student speech. The opinions relied on by plaintiffs followed en banc rehearings and were issued in June 2011, more than two years following the events giving rise to this action. Thus, even considering the Third Circuit's opinions in Layshock and Snyder, those cases in May of 2009 failed to provide "fair warning" to defendants that they could be treading on constitutionally thin ice. Similarly, the Second Circuit recently clarified that its earlier opinion in Thomas did not "clearly establish[] that off-campus speech-related conduct may never be the basis for discipline by school officials." Doninger v. Niehoff, 642 F.3d 334, 347 (2d Cir. 2011).

8

It is apparent that in May 2009 judges did not agree on the parameters of a school official's ability to discipline students for off-campus speech; much less could school officials such as the defendants be expected to clearly understand their limitations in that regard. Thus, the court concludes that the absence of "clearly established law" means that defendants are entitled to qualified immunity as to plaintiffs' claims under § 1983.[3]

B. Claims Under Section 504 of the Rehabilitation Act and the Americans With Disabilities Act

If plaintiffs intended to state a claim under either the Rehabilitation Act or the ADA, they have failed to allege any facts as would even raise their right to relief up to--much less beyond--the speculative level. The only allegation in the complaint that could be said to relate to a disability claim appears as follows:

> 19. As a result of this DAEP placement, Plaintiffs were all placed under emotional stress and anxiety, because Plaintiff K.G.S. is a student with Attention Deficit-Hyperactivity Disorder and struggles to keep up with his schoolwork and maintain passing grades.

Compl. at 4. Nothing alleged in the complaint ties this single statement about K.G.S.'s alleged Attention Deficit-Hyperactivity

---

[3] The court also agrees with defendants that Bradley and BethAnn have no standing to assert claims under § 1983 for the alleged violation of K.G.S.'s constitutional rights. See Coon v. Ledbetter, 780 F.2d 1158, 1160-61 (5th Cir. 1986). None of the cases cited by plaintiffs hold otherwise. Because the court finds that plaintiffs' claims pursuant to § 1983 should be dismissed on the basis of qualified immunity, it need not reach defendants' argument that their conduct was protected by the Noerr-Pennington doctrine.

Disorder ("ADHD") to any of the actions alleged to have been taken by defendants. The complaint does not even allege that defendants were aware of K.G.S.'s ADHD at the time of the events in question. The court concludes that these are the type of "unadorned, the-defendant-unlawfully-harmed-me" accusations the Supreme Court has held insufficient to state a claim for relief. Iqbal, 129 S. Ct. at 1949 (internal citations omitted).

Dismissal of plaintiffs' purported claims under the ADA and the Rehabilitation is also warranted because defendants are not proper parties under either statute. Title II of the ADA prohibits discrimination on the basis of disability by any "public entity," defined as a state or local government, any "department, agency, special purpose district, or other instrumentality of a State or States or local government," or the National Railroad Passenger Corporation. 42 U.S.C. §§ 12131(1), 12132. Similarly, the Rehabilitation Act provides that a qualified individual with a disability will not "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). Kemp and Turner, sued only in their individual capacities, cannot be considered proper defendants under either Title II of the ADA or the Rehabilitation Act. See Alsbrook v. City of Maumelle, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc) ("public entity" as

defined in Title II of the ADA does not include individuals); Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001) (defendants may not be sued in their individual capacities under Title II of the ADA or under Section 504 of the Rehabilitation Act); Lollar v. Baker, 196 F.3d 603, 608-9 (5th Cir. 1999) (suit under the Rehabilitation Act not permitted against government official sued in individual capacity).

In their response to the motion to dismiss, plaintiffs maintained that they have asserted claims under the anti-retaliation provisions of the Rehabilitation Act. To assert such a claim requires an allegation of protected activity, which, in the context of a disability case, means an activity objecting to discriminatory treatment on the basis of disability. See Bradley ex rel. Bradley v. Ark. Dep't of Educ., 443 F.3d 965, 976 (8th Cir. 2006) (discussing requirements for retaliation claims under Rehabilitation Act). The only "activity" alleged by any of the plaintiffs was K.G.S. writing on a golf ball. Neither this, nor anything else alleged in the complaint, could be construed as an activity objecting to discrimination on the basis of disability. Writing curse words and a racial slur on a golf ball is not the type of "protected activity" contemplated by the Rehabilitation Act.[4]

---

[4] The outcome would be the same if plaintiffs asserted such a retaliation claim under the ADA. Seaman v. CSPH, Inc., 179 F.3d 297, 301 (5th Cir. 1999) (retaliation claim under ADA requires "engagement in an activity protected by the ADA").

11

IV.

Order

Therefore,

The court ORDERS that defendants' motion to dismiss be, and is hereby, granted, and that all claims asserted by plaintiffs, K.G.S. by his next friends Bradley S. and BethAnn S., and Bradley S. and BethAnn S. in their individual capacities, against defendants, Kemp and Turner, be, and are hereby, dismissed with prejudice.

SIGNED October 5, 2011.

_____
JOHN McBRYDE
United States District Judge